No. 123,083

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J.B.B.,
*Appellee*,

v.

J.L.B.,
*Appellant*.

SYLLABUS BY THE COURT

1.

A party aggrieved by an order issued by a district judge pro tem who is regularly admitted to practice law in Kansas, and such order arises out of a matter that falls within the jurisdiction of a district magistrate judge, must file their appeal with the Court of Appeals.

2.

A district magistrate judge shall have the jurisdiction and power to preside over all civil cases, save for 13 specific controversies which they are expressly excluded from hearing absent the explicit consent of the parties.

3.

A protection from abuse order is considered a civil order of protection and one which a district magistrate judge is vested with the authority to preside over. As a result, the proper appellate avenue for a party aggrieved by a protection from abuse order issued by a district magistrate judge is to pursue review by the Court of Appeals.

1

4.

The Protection from Abuse Act, K.S.A. 60-3101 et seq., should be construed liberally to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding pro se.

5.

In relevant part, the Protection from Abuse Act defines "abuse" as the occurrence of at least one or more of the following between intimate partners or household members: (1) intentionally attempting to cause bodily injury, or intentionally or recklessly causing bodily injury; or (2) intentionally placing, by physical threat, another in fear of imminent bodily injury.

Appeal from Leavenworth District Court; WILLIAM E. PRAY, judge pro tem. Opinion filed July 9, 2021. Affirmed in part, reversed in part, and vacated protection from abuse order.

*Joseph W. Booth*, of Lenexa, and *Robert Hadley Hall*, of Leavenworth, for appellant.

*Robert R. Laing Jr.*, of Kansas City, for appellee.

Before ARNOLD-BURGER, C.J., GARDNER and ISHERWOOD, JJ.

ISHERWOOD, J.: J.L.B. (J.L.) appeals the district court's decision to grant a protection from abuse (PFA) order against her in favor of her former husband, J.B.B. (J.B.). Given the similarities in the parties' initials, we will refer to them by their first and middle initials for the sake of clarity. J.L. contends that there was not sufficient evidence of bodily injury or a threat of imminent bodily injury to constitute abuse under the Protection from Abuse Act. See K.S.A. 60-3101 et seq. (PFA Act). J.B. testified that J.L.'s irrational behavior during the incident at issue, coupled with her physical assault of his new girlfriend during the encounter, made him fearful for his own safety. The district

court accepted J.B.'s testimony and granted his request for an order of protection from abuse. We are not required to do the same. A fair reading of J.B.'s testimony reveals that it fails to clear the hurdle of substantial competent evidence required for the imposition of such protective measures.

Additionally, J.L. initially filed her appeal with the district court, believing that to be the proper forum to review her challenge to imposition of the order. The district court redirected her appeal to this court, a decision J.L. likewise challenges. The governing statutory provisions dictate that jurisdiction over J.L.'s appeal properly lies with this court.

We therefore determine that the district court's judgment is affirmed in part, reversed in part, and the protection from abuse order imposed against J.L. is vacated.

FACTUAL AND PROCEDURAL BACKGROUND

J.B. filed a petition for an order of protection from abuse against J.L. on June 22, 2020. The district court conducted an evidentiary hearing on the petition on July 13, 2020. District Judge pro tem William E. Pray was assigned to preside over the case. J.B. and J.L. both testified during the proceeding.

J.B. informed the district court that on the day of the incident, he and J.L. were still working through their divorce and met at a Casey's General Store to exchange custody of their minor child. Upon J.L.'s arrival, it was immediately apparent that she was upset over J.B.'s failure to remit a monthly payment owed on the truck J.B. had the privilege of driving but which J.L. still owned. J.B. recalled for the district court that he informed J.L. he would provide the payment in a matter of days, then turned and went into the store. Unappeased by J.B.'s offer, J.L. forcibly entered the passenger side of the vehicle, climbed over J.B.'s girlfriend, and grabbed the keys from the ignition of the

3

truck. Given the way the parties' temporary divorce orders were drafted, J.L. apparently believed she possessed the legal authority to launch such self-repossession measures. A struggle ensued between J.L. and J.B.'s girlfriend, during which the girlfriend sustained a non-remarkable laceration. J.B. further testified that J.L. exhibited anger issues throughout their relationship and pulled knives on her other ex-husband, so it left J.B. wondering what J.L. was truly capable of in the fit of anger she was exhibiting that day. The entire incident was videotaped by surveillance camera, and a copy of the captured recording was provided to the district court by J.B. J.B. did acknowledge he was aware of the district court order that conveyed the right of repossession to J.L., as well as the fact a delay in payment had resulted from J.L.'s attorney losing the check that J.B. previously delivered to him. That delay is apparently what prompted J.L.'s outburst that day.

For her part, J.L. sought to refute the contention that she engaged in fisticuffs that afternoon. She assured the district court that she neither threatened J.B. nor initiated a physical assault. To the contrary, according to J.L., J.B. and his girlfriend restrained her by taking ahold of each of her hands.

At the conclusion of the proceeding, the district court found that J.L. should not have undertaken "self-help repossession," and the consequence of choosing to do so was a violation of the PFA Act and imposition of an order granting J.B.'s request for protection. When J.L. requested the foundation for the district court's ruling, the judge pro tem explained that "busting into [J.B.'s] truck and taking his keys is a threat to him and his . . . possessions, and I, consequently, am finding that it is a violation."

Following the district court's decision, J.L. attempted to file an appeal pursuant to K.S.A. 2020 Supp. 20-310a(d), the provision under which Judge pro tem Pray was appointed to the bench, and requested review by a district judge. The district court dismissed the appeal, however, noting that the proper avenue for review was to file in this court.

J.L. has now appealed to this court, arguing that no abuse occurred and, therefore, no PFA order should have been issued. She further asserts that the judge erred when he dismissed her appeal in the district court. She presented her sufficiency of the evidence claim first, followed by her jurisdictional challenge. We have taken the liberty of reversing the issues, believing that a proper analysis of this case must commence with the clarification of any jurisdictional matters.

### DID THE DISTRICT COURT ERR IN REJECTING J.L.'S APPEAL SEEKING REVIEW FROM A DISTRICT JUDGE PRO TEM?

J.L. challenges the district court's dismissal of her attempt to secure appellate review by a district court judge of Judge pro tem Pray's imposition of a protective order. Specifically, she contends that K.S.A. 2020 Supp. 20-310a(d) provides the proper pathway for relief because it states that when a judge pro tem is appointed under this subsection of the statute, as Pray was, any orders subsequently issued by that appointee are to be reviewed de novo in the district court. While this court agrees that the statutory provision referenced by J.L. is not without a measure of confusion and includes internally inconsistent language, the district court nevertheless properly concluded that an appeal to this court was the appropriate avenue for J.L. to pursue in her quest to obtain review of the protective order imposed against her.

*Basic Legal Principles*

This issue raises concerns regarding appellate jurisdiction. Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). Similarly, review of J.L.'s claim mandates an analysis of the governing statutory provisions. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When the record discloses a

5

lack of jurisdiction, the appellate court must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 85, 370 P.3d 114 (2016).

Resolution of this matter necessitates the navigation of three separate, yet interrelated, provisions triggered by Pray's appointment: K.S.A. 2020 Supp. 20-310a(d), K.S.A. 2020 Supp. 20-302b(a), and K.S.A. 2020 Supp. 20-302b(c)(2). The natural inclination is to home in on the portions of those provisions which speak directly to appellate review.

Beginning with K.S.A. 2020 Supp. 20-310a(d), it states the following regarding the appellate process:

> "(d) . . . Any party aggrieved by any order of a judge *pro tem* under this subsection may appeal such order and such appeal shall be heard by a district judge *de novo*. If the appeal is a small claims action, the appeal shall be under K.S.A. 61-2709, and amendments thereto. If the appeal is an action within the jurisdiction of a district magistrate judge, the appeal shall be under K.S.A. 20-302b, and amendments thereto."

Turning then to K.S.A. 2020 Supp. 20-302b, the portion of that provision which addresses appellate review is found at subsection (c)(2), which states as follows:

> "In accordance with the limitations and procedures prescribed by law, and subject to any rules of the supreme court relating thereto, any appeal permitted to be taken from an order or final decision of a district magistrate judge: (A) Who is not regularly admitted to practice law in Kansas shall be tried and determined de novo by a district judge, except that in civil cases where a record was made of the action or proceeding before the district magistrate judge, the appeal shall be tried and determined on the record by a district judge; and (B) who is regularly admitted to practice law in Kansas shall be to the court of appeals."

Pray, a "regularly admitted" member of the Kansas Bar, was appointed to hear matters "within the jurisdiction of a district magistrate judge" as provided in K.S.A. 2020 Supp. 20-302b. Thus, whether the district court properly directed J.L. to pursue her appeal to this court turns on whether protection from abuse orders can be said to fall "within the jurisdiction of a district magistrate judge." The answer to that question requires that we remain under K.S.A. 2020 Supp. 20-302b, but we now focus our attention on subsection (a), which reads:

> "Subject to assignment pursuant to K.S.A. 20-329, and amendments thereto, a district magistrate judge shall have the jurisdiction and power, in any case in which a violation of the laws of the state is charged, to conduct the trial of traffic infractions, violations of the wildlife, parks and tourism laws of this state or rules and regulations adopted thereunder, cigarette or tobacco infractions or misdemeanor charges, to conduct felony first appearance hearings and the preliminary examination of felony charges and to hear misdemeanor or felony arraignments. A district magistrate judge shall have jurisdiction over uncontested actions for divorce. Except as otherwise specifically provided in this section, a district magistrate judge shall have jurisdiction over actions filed under the code of civil procedure for limited actions, K.S.A. 61-2801 et seq., and amendments thereto, *and all other civil cases*, and shall have concurrent jurisdiction, powers and duties with a district judge." (Emphasis added.)

Our research reveals that the italicized language clarifies that portion of Judge pro tem Pray's authority as it relates to this case. That is, included within the purview of the vast net cast to encompass "all other civil cases" are protection from abuse orders. This court has previously held that a protection from abuse order is considered a civil order of protection. See *Kerry G.*, 53 Kan. App. 2d 218, Syl.; see also *C.B. v. Bailey*, No. 122,581, 2021 WL 2386378, at *2 (Kan. App. 2021) (unpublished opinion) ("K.S.A. 60-3109 specifically provides that the ordinary rules of civil procedure apply to proceedings under the protection from abuse act."). Moreover, because district magistrate judges share concurrent jurisdiction with a district court, a district magistrate judge would seemingly be permitted to preside over PFA claims. See K.S.A. 2020 Supp. 60-3103 ("Any district

7

court shall have jurisdiction over all proceedings under the protection from abuse act."). Finally, K.S.A. 2020 Supp. 20-302b(a) also sets forth a list of 13 controversies which district magistrate judges are specifically excluded from presiding over absent express consent of the parties. The Legislature did not see fit to include protection from abuse orders within that list.

It is not lost on this court that an inherent conflict exists in the plain language of K.S.A. 2020 Supp. 20-310a(d). Specifically, it states that "[a]ny party aggrieved by any order of a judge *pro tem* under this subsection may appeal such order and such appeal shall be heard by a district judge *de novo*," yet later directs that the proper avenue of appeal for litigants such as J.L. is before this court. The tension between those directives reflects an outdated inaccuracy in the statute worthy of correction, but not one which is fatal to our conclusion here with respect to the propriety of the district court's decision over J.L.'s appeal. K.S.A. 20-302b(a) was amended in 2015 to insert the requisite language to include "all other civil cases" within the jurisdiction of district court magistrate judges. This court is of the opinion that given the plain language of K.S.A. 2020 Supp. 20-310a(d)—the provision under which Pray was appointed, which states that appeals taken from actions within the jurisdiction of a district magistrate judge are to be pursued in accordance with "K.S.A. 20-302b, and amendments thereto"—that the directive necessarily encompasses the 2015 amendments. Thus, J.L. was properly directed to file her appeal from the imposition of a protection from abuse order, a civil matter, with this court.

Because the relevant statutory provisions reflect that Judge pro tem Pray was authorized to act within the jurisdiction of a district magistrate judge—jurisdiction which broadly encompasses all civil matters, including protection from abuse claims—the district court correctly determined that to obtain review of the PFA order imposed against her, J.L. needed to file her appeal in this court, not the district court. See K.S.A. 2020 Supp. 20-310a; K.S.A. 2020 Supp. 20-302b.

8

J.L. raised an additional appellate issue requesting that her claims not be dismissed as moot in the event this court fails to resolve her case prior to the expiration of the PFA order on July 13, 2021. Given the timing of this court's opinion, it is unnecessary to address this issue.

## WAS THE DISTRICT COURT'S DECISION TO IMPOSE A PROTECTION FROM ABUSE ORDER AGAINST J.L. SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE?

J.L. challenges the sufficiency of the evidence the district court relied on in issuing the PFA order and asserts there was not substantial competent evidence to reflect abuse as defined in relevant statutes. J.B., of course, takes the contrary position, directing our attention to J.L.'s entry into his vehicle. J.B. further contends that it is reasonable to conclude that he was afraid because he faced having to ensure the safety of the occupants of his vehicle and of the vehicle itself. Additionally, he likens the fear in the situation involved here to a scenario in which a person is in their home and hears a loud noise outside and, upon investigation, finds a third party vandalizing their property.

*Basic Legal Principles*

When a party challenges the sufficiency of the evidence, this court determines whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's legal conclusions. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019); *Gannon v. State*, 298 Kan. 1107, 1175-75, 319 P.3d 1196 (2014). Substantial competent is "'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 470, 447 P.3d 959 (2019). Stated another way, substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion. *Geer*, 309 Kan. at 190; *Barnett v. Barnett*, 24 Kan. App. 2d 342, 348, 945 P.2d 870 (1997).

9

Appellate courts "do not reweigh the evidence or make our own credibility determinations, and we generally view the evidence in the light most favorable to the party who prevailed in the district court." *Kerry G. v. Stacy C.*, 53 Kan. App. 2d 218, 221-22, 386 P.3d 921 (2016). In doing so, we must accept "all evidence and inferences that support or tend to support the [district court's] findings as true, and . . . must disregard all conflicting evidence." *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709-10, 216 P.3d 170 (2009).

The PFA Act should be construed liberally "to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding pro se." K.S.A. 60-3101(b). PFA orders are by their nature subjective judgments, and the district court is in the best position to know when they are warranted. *Jordan v. Jordan*, 47 Kan. App. 2d 300, 306, 274 P.3d 657 (2012).

After hearing testimony from both parties and watching a video of the incident, the district court determined that a PFA order against J.L. was warranted. In making this decision, the district court noted that J.L. seemingly sought to engage in a "self-help repossession" of her truck. When J.L.'s counsel requested that the district court provide J.L. with a more detailed reason for its decision to issue the PFA order, the court simply responded: "I think busting into [J.B.'s] truck and taking his keys is a threat to him and his . . . possessions, and I, consequently, am finding that it is a violation." This finding cannot establish that J.L. committed an act of abuse as contemplated under the PFA Act.

In relevant part, the PFA Act defines "[a]buse" as the occurrence of at least one or more of the following acts between intimate partners or household members:

- "Intentionally attempting to cause bodily injury, or intentionally or recklessly causing bodily injury"; or

10

- "Intentionally placing, by physical threat, another in fear of imminent bodily injury." K.S.A. 2020 Supp. 60-3102(a).

J.B. testified that when J.L. opened the passenger side door of the truck, she "climbed . . . over" his girlfriend to try to get the keys to the truck out of the ignition, leading to a struggle between the two women over the keys. He also testified that J.L. had "multiple" previous instances in which she exhibited anger issues. J.B. alleged that J.L. had previously "pulled knives" on her other ex-husband and suggested that she may have carried a weapon into court for the hearing. When asked whether J.L. threatened him during the interaction, J.B. answered that she had threatened him "many times" in the past. The most aggressive behavior that J.B. testified J.L. committed on the day of the incident was that J.L. "was beating on [his] girlfriend," which he claimed caused him to fear for himself.

The court also watched the video of the encounter but seemingly did not place any emphasis on the same or rely on it in any way in making its decision. We have likewise undertaken a review of the video and similarly found it to be unpersuasive.

The district court found that J.L.'s act of entering J.B.'s truck constituted a threat. While this court has been reluctant to substitute the district court's judgment with our own in protection from abuse matters, we are equally committed to ensuring that individuals are not unjustly subjected to measures for which a firm evidentiary foundation is lacking. Such is the case here. We decline to find that the evidence offered in support of the protective order rose to the level of substantial competent evidence required to establish that such a measure was warranted.

Comparing the facts of this case with those considered in *Trolinger v. Trolinger*, 30 Kan. App. 2d 192, 194-95, 42 P.3d 157 (2001), we recognize that while the evidence in that case leaned toward the minimal end of the spectrum, it was, though, ultimately

11

sufficient to sustain imposition of the order. Specifically, the *Trolinger* panel considered the following evidence when reviewing the district court's order:

> "Valerie never specifically testified that Arby had done great physical harm to her, but she did testify that he had frightened her and that she was afraid of him. According to Valerie, Arby had made a point of having a discussion with her and told her how he could make bodies disappear. According to Valerie, Arby kept loaded weapons in the home, and the Oklahoma authorities had investigated him for possible involvement in the disappearance of his former wife. On one occasion, Valerie attempted to call her son while she was at home and found the phone had been disconnected, a car key was missing from her keyring, and the garage was padlocked.
>
> "Valerie testified about regular instances in which Arby would restrain her against her will by squeezing her to a point where she feared he was going to crack one of her ribs. She also testified that Arby had hit her son. According to Valerie, she was constantly in fear that Arby would do bodily injury to her and to her son." 30 Kan. App. 2d at 194-95.

The panel also outlined a portion of the testimonial evidence Arby presented in his defense. But that is unnecessary here. Again, this court does not reweigh evidence. *Kerry G.*, 53 Kan. App. 2d at 221-22. It also accepts the evidence and inferences that support the trial court's findings and disregards conflicting evidence. *Frick Farm Properties*, 289 Kan. at 709-10. The evidence before the district court, and likewise the evidence before this court, is insufficient to support the district court's imposition of a protection from abuse order against J.L. The order is vacated.

The decision of the district court is affirmed in part and reversed in part, and the protection from abuse order imposed against J.L. is vacated.