NOT DESIGNATED FOR PUBLICATION

No. 128,615

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

V.H.,
*Appellee,*

v.

W.O.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Submitted without oral argument. Opinion filed November 26, 2025. Affirmed.

*Van Z. Hampton*, of Warrior Lawyers International, of Dodge City, for appellant.

*Noah Hahs*, of Kansas Legal Services, Inc., of Dodge City, for appellee.

Before HURST, P.J., GARDNER and BOLTON FLEMING, JJ.

PER CURIAM: V.H. was a security supervisor at Boot Hill Casino where W.O. was a patron. While on duty, V.H. felt W.O. grab her buttock as he was walking by. V.H. notified her supervisor and manager, who questioned W.O. about the incident. During the questioning, W.O. made several sexual comments about V.H.

In response to W.O.'s actions, V.H. filed a petition for Protection from Sexual Assault under the Protection from Stalking, Sexual Assault, or Human Trafficking Act, K.S.A. 2024 Supp. 60-31a01 et seq. V.H. claimed that W.O. had committed a "sexual assault" under the Act, which is defined in K.S.A. 2024 Supp. 60-31a02(c)(1) as a

1

"nonconsensual sexual act." After a contested hearing, the district court granted V.H. a final order of protection against W.O. W.O. timely appeals.

W.O. raises three issues on appeal:

- whether the district court erred in its interpretation of K.S.A. 2024 Supp. 60-31a02(c)(1) when it determined the nonconsensual grabbing of a buttock constituted a "nonconsensual sexual act;"
- whether the district court abused its discretion in finding that W.O.'s actions constituted a "nonconsensual sexual act;" and
- whether the district court abused its discretion in finding that V.H.'s inconsistencies in the description of the touching did not constitute perjury.

We conclude that the district court correctly interpreted K.S.A. 2024 Supp. 60-31a02(c)(1) when it held the nonconsensual grabbing of a person's buttock may constitute a "nonconsensual sexual act." Moreover, the district court did not abuse its discretion in finding W.O.'s actions constituted a "nonconsensual sexual act" because we cannot say that no reasonable person would agree with the district court, and the district court made no error of law or fact. Finally, the district court did not abuse its discretion in finding that V.H.'s inconsistent description of the incident did not constitute perjury because substantial competent evidence supports the district court's decision. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2024, V.H. was working as a security supervisor for the Boot Hill Casino in Dodge City, Kansas. That evening, W.O., a casino patron, walked through the gaming area and passed behind V.H. As he passed, W.O. grabbed V.H.'s left buttock through her clothing.

2

Following the incident, a co-worker asked V.H., "Are you gonna let him grab you like that?" V.H. replied, "No, I wouldn't." In response, V.H. approached her supervisor and manager, so they could handle the situation. Prior to escorting W.O. from the casino, the supervisor and manager questioned him. When asked about V.H., W.O. told the manager that "he wished he would've stuck his tongue down her throat." The manager mentioned that during the remainder of their encounter with W.O., W.O. made other inappropriate statements that he could not specifically recall. The manager acknowledged that the additional statements made by W.O. were sexually degrading toward V.H.

After W.O. was escorted from the casino, a security supervisor obtained a written statement from V.H. about the incident. V.H. also completed a Kansas Racing and Gaming Commission witness statement that described the incident:

> "I felt a squeeze on my left butt cheek. That is when Sandy G. slot attendant told me 'you let him grab your butt' and I said, 'No I didn't'. I yelled at the patron and said 'sir' to get his attention, but he kept walking and swinging his arms. . . ."

On May 17, 2024, W.O. was charged with Sexual Battery in Ford County District Court. That case was eventually resolved by agreement of the parties.

On October 1, 2024, V.H. filed a Petition for Protection from Sexual Assault under the Act against W.O. In the petition, V.H. alleged that W.O "grabbed me in the private area and butt. It was a very intentional grab and made me extremely uncomfortable. I began to cry."

The case proceeded to final hearing where V.O. testified that W.O. grabbed her left buttock, and that she did not consent to that touching. On cross-examination, W.O.'s attorney questioned whether V.H. was lying in her petition when she wrote that W.O. had grabbed her "in the private area and butt," because she was only touched on the buttock. V.H. was also shown surveillance video that depicted her smiling after the incident. V.O.

admitted she was laughing at her co-worker who had been laughing at her following the incident. V.H. acknowledged her misuse of words when referring to the incident and asserted that she did not have the intention to lie when describing the encounter. V.H. explained that she considered her butt to be private, and when she referred to a "private area" in her petition, she was describing the unwanted sexual touching by W.O. on her buttocks.

W.O. testified and did not deny touching V.H. on the buttocks. W.O. contended that he did not intend to become aroused by touching V.H. and had no sexual interest in V.H. He also stated that he did not touch any sexual organ. W.O. argued that the incident was at most rude touching and should only constitute a simple battery under criminal law. The parties disagreed on the definition of "nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1).

The district court found that V.H. established by a preponderance of the evidence that a nonconsensual sexual act had occurred and granted her a protection order against W.O. The district court specifically found:

"Now, the difficult thing is the Court has to make specific findings of things that, as Mr. Hampton pointed out, don't have a lot of definition, and—but the bottom line is as far as—This is not a criminal case. If it's a criminal case, it's a higher standard. The State has to prove each element in—beyond a reasonable doubt. This is a preponderance of evidence. That's just more probably true than not true, and so it's a lot lower standard. That's a big thing and—but I did hear both witnesses. Both witnesses were credible. But the question is—and Mr. Hampton has identified it—is what is a non-consensual sexual act? I do not find that the federal definition is helpful because this is in the context of preventing offensive acts towards a particular person. It's not about sexual—It's not a crime. It's different than a crime. It's what is offensive to the public necessarily, and I think that it's--it would be fair to say that it's offensive in public to grab a stranger's butt. That's a sexual act of grabbing someone's butt. That is–In our society, that is part of—part of the whole sex area. I'll put it that way. And explicitly part of the sex area for some—

4

some people. So as far as it being a sexual area, it's entitled to protection. Yes, you can't just grab somebody's butt and not face potential protection because that is offensive, and so the bottom line is simply I found her credible. I found that—I find that her butt was grabbed. It was relatively brief, but when that is stacked on top of the statement that you gave to the supervisor once—or the—once being questioned about this, that–I'm trying to remember the exact statement—basically you should've stuck your tongue—let's see if I can find it here—that I think the statement was—my memory is that you should've stuck your tongue down her throat. Obviously, that's also part of a sexual statement and so it shows some sexual intent of what originally went on, and I understand this has potential consequences. It was relatively brief. It does seem relatively extreme for such a brief contact, but the bottom line is, our legislature has designed this to protect people from this type of conduct, and so the—I do wish that it had better definition, a non-sexual act—a non-consensual sexual act, but I do find that there was a sexual act there and I do find that it was non-consensual, and so I'm gonna find that Plaintiff has met their burden by preponderance of the evidence, that she's entitled to a protection-from-stalking or sexual-assault order, and that order will be for one year from today's date."

W.O. timely appeals.

ANALYSIS

DID THE DISTRICT COURT ERR IN INTERPRETING "SEXUAL ASSAULT" AND "NONCONSENSUAL SEXUAL ACT" UNDER K.S.A. 2024 SUPP. 60-31a02(C)(1)?

On appeal, W.O. first argues that the district court erred in interpreting "sexual assault" and "nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1).

*Standard of Review*

Statutory interpretation presents a question of law over which appellate courts have unlimited review. *Nicholson v. Mercer*, 319 Kan. 712, 714, 559 P.3d 350 (2024). The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368

(2022). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *In re Wrongful Conviction of Sims*, 318 Kan. 153, 158, 542 P.3d 1 (2024).

*Discussion*

The Protection from Stalking Act is to be construed liberally to protect victims of stalking, sexual assault, and human trafficking:

> "(b) This act shall be liberally construed to protect victims of stalking, sexual assault and human trafficking and to facilitate access to judicial protection for victims of stalking, sexual assault and human trafficking, whether represented by counsel or proceeding pro se." K.S.A. 2024 Supp. 60-31a01(b).

In this case, V.O. filed a petition for protection against W.O., related to W.O. walking behind V.O. and grabbing her buttock. V.O. alleged that W.O.'s actions constituted a "sexual assault" under the Act.

V.O.'s petition was set for final hearing. At the final hearing, V.O. was required to prove "the allegation of stalking, sexual assault or human trafficking by a preponderance of the evidence . . . ." K.S.A. 2024 Supp. 60-31a05(a). At the conclusion of the hearing, the district court found that V.O. had met her burden of proof and granted her a final protection order.

*Interpretation of "Sexual Assault" and "Nonconsensual Sexual Act"*

The central issue in this case is the interpretation of "sexual assault" and "nonconsensual sexual act" under the Act.

K.S.A. 2024 Supp. 60-31a02(c) provides:

"(c) 'Sexual assault' means:

      (1) A nonconsensual sexual act; or

      (2) an attempted sexual act against another by force, threat of force, duress or
      when the person is incapable of giving consent."

The parties in this case agree that the applicable definition of "sexual assault" in this particular case is "[a] nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1). The Legislature did not further define "[a] nonconsensual sexual act" under the statute. On appeal, W.O. argues that the district court erred in finding the act of grabbing a buttock meets the definition of a "[a] nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1).

*Application of K.S.A. 77-201*

First, W.O. argues that K.S.A. 77-201 should have guided the district court in its interpretation of K.S.A. 2024 Supp. 60-31a02(c)(1). W. O. argues that the following statutory language applied:

"*Second*. Words and phrases shall be construed according to the context and the approved usage of the language, but technical words and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings." K.S.A. 77-201.

On appeal, W.O. points out that "the context and the approved usage of the language" of K.S.A. 2024 Supp. 60-31a02(c)(1) controls. In other words, if the term at issue has no definition but has been used commonly within an area of law, that context and approved usage help to define the term. See K.S.A. 77-201.

The term "nonconsensual sexual act" is not further defined by statute. W.O. argues that the proper context of the term under K.S.A. 77-201 is criminal law. He reaches this conclusion because the Kansas Judicial Council provides forms related to cases filed

7

under the Act, including a petition form. That petition form includes a question about whether a criminal case was filed related to the incident described in the Act petition. If a companion criminal case has been filed, the form contains an instruction to identify the county where it was filed and if possible, the case number.

W.O. then extrapolates that because the Kansas Judicial Council included information about companion criminal cases on its form, this signifies an intent by the Kansas Legislature to import criminal law standards into civil proceedings under the Act. But W.O. cites no authority for this argument. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is the same as failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018). Issues not adequately briefed are deemed waived or abandoned. *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Nonetheless, the district court's order is consistent with K.S.A. 77-201. The district court's order met the requirement under K.S.A. 77-201 that "[w]ords and phrases shall be construed according to the context and the approved usage of the language." There is little Kansas caselaw analyzing protection cases, and none interpreting the term "nonconsensual sexual touch." There is no obvious "context" or "approved usage" of the term to rely upon, except to construe the term considering the liberal interpretation we are to give the Act. See K.S.A. 2024 Supp. 60-31a01(b).

As is discussed below, the district court applied a plain and common meaning to the term "nonconsensual sexual act" to reach the correct result. The district court considered whether grabbing someone's buttock without their consent constitutes a nonconsensual sexual act. The district court found:  "In our society, that is part of—part of the whole sex area. I'll put it that way. And explicitly part of the sex area for some—

8

some people. So as far as it being a sexual area, it's entitled to protection." W.O. fails to explain how the district court's order violated the principles found in K.S.A. 77-201.

*Criminal definitions do not apply here.*

W.O. urges us to adopt a definition from the field of criminal law to interpret the term "nonconsensual sexual act." W.O. argues we should apply the definition of "unlawful sexual act" found in K.S.A. 21-5501(d):

> "(d) 'Unlawful sexual act' means any rape, indecent liberties with a child, aggravated indecent liberties with a child, criminal sodomy, aggravated criminal sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery, as defined in this code."

But this statutory definition, by its own language "as defined in this code," is limited to offenses defined under the Kansas criminal code. And while W.O. argues that the terms "unlawful sexual act" and "nonconsensual sexual act" are only separated by an adjective, he again fails to supply any authority in favor of adopting this criminal definition. W.O. has abandoned this argument. 307 Kan. at 977.

W.O. also points out the difference in committing a simple battery under K.S.A. 21-5413, and a sexual battery under K.S.A. 21-5505(a).

Battery is "(1) Knowingly or recklessly causing bodily harm to another person; or (2) knowingly causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 21-5413(a)(1), (2).

Sexual battery "is the touching of a victim who is 16 or more years of age and who does not consent thereto, with the intent to arouse or satisfy the sexual desires of the offender or another." K.S.A. 21-5505(a).

9

The definitions of these two crimes are clearly different, and sexual battery requires an intent to arouse. But W.O. makes no additional argument as to how the comparison of these two crimes supports his argument, or why either definition should be adopted in the present case. We do not find the comparison to be persuasive.

There are no Kansas cases considering the definition of "nonconsensual sexual act" under the Protection from Stalking Act. But in *Kerry G. v. Stacy C.*, 53 Kan. App. 2d 218, 224, 386 P.3d 921 (2016), this court considered whether unwanted sexual touching caused a "bodily injury" as part of a petition under the Protection from Abuse Act, K.S.A. 60-3101 et seq. In *Kerry G.*, our court specifically discussed the differences between considering sexual acts in the context of a criminal case as compared to a case brought under the Protection from Abuse Act:

> "We recognize, of course, that the evidentiary hearing held in the Protection from Abuse Act case now before us was not a criminal trial; separate criminal charges were pending, and our record does not disclose how they were resolved. But in this civil proceeding, with its lesser standard for the burden of proof, Kerry proved facts that amount to rape as the law defines it. And that certainly qualifies as bodily injury under the Protection from Abuse Act. Rape is a serious and sexually violent crime in the Kansas Criminal Code; future cases may present facts constituting other types of sexual misconduct. In line with the directive to liberally construe the act to protect victims of domestic violence, we conclude *any* unwanted sexual touching would cause bodily injury for the purposes of the Act." 53 Kan. App. 2d at 224.

*Kerry* was brought under the Protection from Abuse Act; still, the case offers persuasive guidance that we should refrain from adopting legal standards from criminal cases when considering cases brought under the Protection from Stalking Act, due to the lesser burden of proof. *Kerry* also reaffirms the liberal construction courts are to give both acts to protect victims. 53 Kan. App. 2d at 224; K.S.A. 60-3101 (b); see K.S.A. 2024 Supp. 60-31a01(b). The criminal definitions offered by W.O. simply do not apply in this case.

10

*18 U.S.C. § 2246(2) does not apply.*

W.O. next argues that the district court should have adopted a definition from 18 U.S.C. § 2246(2) for the term "sexual act" as part of our consideration of the term "nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1). Under 18 U.S.C. § 2246(2):

> "(2) the term 'sexual act' means—
>> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
>> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
>> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
>> (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person. . . ." 18 U.S.C. § 2246(2).

W.O. argues that we should adopt this definition from Title 18 of the United States Code because it is "expressed in the prescribed [o]rders created by the Judicial Council which the legislature approved for use by the District Courts in PFSSAHTA cases. That reference to Title 18 of the United States Code also appears in the order issued against W.O. on November 22, 2024 . . . ."

The statement W.O. refers to is a certificate of compliance under the Violence Against Women Act, 18 U.S.C. § 2265, that appears on standard forms provided by the Kansas Judicial Council in protection cases. But 18 U.S.C. § 2265 pertains to giving full faith and credit to protection orders between states, Indian tribes and territories. It is

11

completely unrelated to the definition of "sexual act" found at 18 U.S.C. § 2246(2), which is a federal criminal statute. W.O.'s unsupported argument lacks merit.

*The plain language of K.S.A. 60-31a02(c)(1) controls.*

It is a basic rule of statutory construction that words are given ordinary meaning unless the Legislature indicates otherwise. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022).

> "The primary aim of statutory interpretation is to give effect to the Legislature's intent, expressed through the plain language of the statute. If a statute is plain and unambiguous, we will not speculate about the legislative intent behind that clear language. We do not add or ignore statutory requirements, and we give ordinary words their ordinary meanings." *State v. Ninh*, 320 Kan. 477, 490, 570 P.3d 1169 (2025).

Here, we consider the term "[a] nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c). W.O. does not dispute that a single act may satisfy the term, nor does he argue the nonconsensual nature of the touching in this case. But W.O. takes issue with both the *sexual* nature of the touching of V.H.'s buttock as well as the *act* itself.

We find that the district court did not err when it pointed out that for some, the buttocks are body parts involved in a sexual act. The district court's inclusion of the buttocks as body parts reasonably involved in a "sexual act" is consistent with the plain and ordinary definition of the term. Black's Law Dictionary defines "sexual act" within the definition of "sexual relations." In addition to sexual intercourse, the definition of sexual relations includes: "Physical sexual activity that does not necessarily culminate in intercourse. • Sexual relations usu. involve the touching of another's breast, vagina, penis, or anus. Both persons (the toucher and the person touched) are said to engage in sexual relations. — Also termed *sexual activity*; *sex act*." Black's Law Dictionary 1657 (12th ed. 2024).

12

Without giving an extensive explanation of human anatomy, grabbing someone's buttock without their consent is reasonably included as part of the touching of another person's private area. Buttocks are in very close proximity to multiple other private areas described in the Black's Law Dictionary definition of sexual relations. Grabbing a person's buttock may be considered a "sexual act" under the Act depending on the facts of a specific case. Such an interpretation is consistent with a reasonable and ordinary meaning assigned to the term "sexual act." See 320 Kan. at 490.

*Legislative history does not support W.O.'s argument.*

W.O. argues that the legislative history of K.S.A. 60-31a02 "reveals the legislature did not intend protective orders to be granted in response to mere touching." For support, W.O. points to the legislative history of the amendments to K.S.A. 60-31a02 when the Protection from Stalking Act was amended to include protection from sexual assault. The definition for sexual assault initially proposed in 2017 Senate Bill No. 101 provided that "'Sexual assault' means any sexual contact or attempted sexual contact with another person without consent. . . ." However, this definition was changed when the bill was sent to the House of Representatives, which resulted in the current language being passed in L. 2017, ch. 66, §4, defining sexual assault as "a nonconsensual sexual act." K.S.A. 2017 Supp. 60-31a02(c)(1). W.O. reasons that the Kansas Legislature rejected "sexual contact" in favor of "nonconsensual sexual act." But W.O. fails to provide any supporting authority or legislative history that gives the reason for the amendment. We cannot presume the legislature intended to change the substance of the definition as opposed to clarifying the language for another purpose. W.O. has failed to prove that the legislature intended to exclude "contact" with the amendment to this statute.

*Conclusion*

We find that considering the liberal interpretation we are to give the Act under K.S.A. 2024 Supp. 60-31a01(b), the district court correctly found the grabbing of V.H.'s buttock constituted a "nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1).

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FINDING THAT THE TOUCHING OF V.H.'S BUTTOCK CONSTITUTED A "NONCONSENSUAL SEXUAL ACT"?

W.O. next argues that the district court abused its discretion by finding that the evidence proved W.O.'s actions constituted a nonconsensual sexual act under K.S.A. 2024 Supp. 60-31a02(c)(1).

*Standard of Review*

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. 319 Kan. at 400.

*Discussion*

Here, W.O. argues that the district court abused its discretion by committing all three types of error related to the abuse of discretion standard.

First, W.O. maintains that "the judge's finding, that W.O.'s touch of V.H. on the outside of her butt cheek, over her clothing, with no other evidence of sexual intent constituted a 'sexual act', was unreasonable." W.O. states that V.H. testified she was not

14

touched on any "sex part" of her body, that she was not aroused, and that she saw no evidence that W.O. was aroused. W.O. also points out that V.H. did not know whether W.O. had any sexual intent; and W.O. denied having any sexual interest in V.H.

But W.O.'s arguments do not address the actual inquiry. The district court was tasked with determining whether W.O.'s actions in grabbing V.H.'s buttocks constituted a nonconsensual sexual act under K.S.A. 2024 Supp. 60-31a02(c)(1). There is no requirement under that statute, or any case, that the district court must find evidence of "arousal." It is also irrelevant whether V.H. knew of W.O.'s sexual intent. Moreover, the district court considered W.O.'s testimony in reaching its decision.

After considering the evidence in the case, the district court found that "it would be fair to say that it's offensive in public to grab a stranger's butt. That's a sexual act of grabbing someone's butt." The district court made this finding after hearing evidence that W.O. passed behind V.H. and grabbed her butt, then made a statement that "he wished he would've stuck his tongue down her throat."

> "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, [then] it cannot be said that the trial court abused its discretion." *In re J.W.S.*, 250 Kan. 65, 72, 825 P.2d 125 (1992) (citing *State v. Wagner,* 248 Kan. 240, 242, 807 P.2d 139 [1991]).

Here, we cannot say that no reasonable person would agree with the district court's decision that when W.O. grabbed V.H.'s buttock, he committed a nonconsensual sexual act under the Act. W.O. has failed to prove the district court's decision was unreasonable.

W.O. also argues that the district court abused its discretion by committing an error of law. W.O. simply restates his arguments from his first issue on appeal that the

15

district court erred in interpreting K.S.A. 2024 Supp. 60-31a02. We have addressed W.O.'s arguments in this opinion and will not restate those findings here.

Finally, W.O. claims that "the judge committed an error of fact when he found W.O.'s actions constituted a 'sexual assault.'" In support of this argument, W.O. simply states, "[r]eference is made to the discussion under the First Issue." Since we have discussed the first issue at length, we will not repeat those findings.

After considering each of W.O.'s claims, we conclude the district court did not abuse its discretion in finding that W.O.'s actions constituted a "nonconsensual sexual act" under K.S.A. 2024 Supp. 60-31a02(c)(1).

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FINDING THAT V.H. DID NOT COMMIT PERJURY?

W.O.'s final argument is that the district court abused its discretion by failing to find that V.H.'s inconsistent description of the touching constituted perjury.

*Standard of Review*

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. at 400. As the party asserting the district court abused its discretion, W.O. bears the burden of showing such abuse of discretion. 319 Kan. at 400.

*Discussion*

In his brief, W.O. points out several inconsistencies in V.H.'s statements and actions. He asserts the district court erred by failing to make a perjury finding related to

16

those inconsistencies. W.O. argues that the judge's factual findings were not supported by substantial competent evidence, constituting an error of fact, and an abuse of discretion.

W.O. takes issue with the statement V.H. made in her petition for Protection from Sexual Assault, where she wrote "he grabbed me in the private area and butt." Later, at trial, V.H. would clarify that she did not mean to deceive anyone, and that W.O. touched her "butt." W.O. also argued that a video of the incident showed V.H. smiling, and that was evidence V.H. had fabricated her story. But V.H. explained that she smiled after a co-worker spoke with her about the incident.

The district court considered the evidence and dismissed W.O.'s arguments, finding V.H. credible. The district court found:

> "One thing I want to clearly address; the Court does not find she committed perjury. She was a scared witness, obviously scared, obviously—her words—She has no understanding of what the legal terms mean, and so I just want to clearly debunk any-anything that would—could be construed as she committed perjury. She told her story and it may have not been precise, it may have not been completely 100 percent the same every time, but to me that's just what—a normal witness tying—your statements sometimes change somewhat. So I found her a very credible witness, but a very scared witness. She was scared to be in here. She was scared to be talking about this. All that is normal, okay? So I want to clear that up at the get-go."

As a preliminary matter, W.O. provides no authority to establish the district court had a duty within this proceeding to even determine whether V.H. had committed criminal perjury pursuant to K.S.A. 21-5903(a). He does not explain why the district court should consider a claim of perjury within this action, nor does he explain what standards should apply if the district court were to apply a criminal perjury statute within a civil matter. W.O.'s failure to provide supporting authority is akin to failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. at 912.

17

But W.O.'s argument also fails on the merits. W.O. states, "The judge never attempted to discern whether the law proscribing perjury was violated. A look at the perjury statute found at K.S.A. 21-5903 reveals the judge's error." W.O. then alleges that the judge "made up facts" in finding V.H. was scared. W.O. also claims the judge was biased against W.O. and his counsel by using the word "debunk" in his ruling. W.O. also claims that the district court "made additional findings that disregarded the evidence that there was no touch on a 'sex part' or 'private area.'" Though W.O. has failed to provide authority to support his arguments, we will nonetheless address his claim under K.S.A. 21-5903(a).

Perjury is defined as:

"intentionally and falsely:
"(1) Swearing, testifying, affirming, declaring or subscribing to any material fact upon any oath or affirmation legally administered in any cause, matter or proceeding before any court, tribunal, public body, notary public or other officer authorized to administer oaths;
"(2) subscribing as true and correct under penalty of perjury any material matter in any declaration, verification, certificate or statement as permitted by K.S.A. 53-601, and amendments thereto; or
"(3) subscribing as true and correct under the penalty of perjury the affidavit as provided in K.S.A. 25-1121(c), and amendments thereto." K.S.A. 21-5903(a).

W.O. believes that V.H.'s act of perjury falls under K.S.A. 21-5903(a)(2). W.O. argues that the statement made in V.H.'s petition that W.O.'s touching included her "private area and butt" was made intentionally and falsely, and in support of her request for a protection order. He claims that not only was the statement in the petition intentionally and falsely made, but that the statement was related to a "material matter." K.S.A. 21-5903(a)(2).

18

But inconsistencies in the description of an incident do not automatically rise to the level of perjury. The inconsistent statements must involve an intentional falsehood regarding a material matter. K.S.A. 21-5903(a). The district court concluded that V.H. did not intentionally provide false information. We review the district court's decision to determine whether it is supported by substantial competent evidence.

When determining whether substantial competent evidence exists, "an appellate court must not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." *Granados v. Wilson*, 317 Kan. 34, 41, 523 P.3d 501 (2023). "Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion." *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 (2013).

Here, the district court evaluated whether the inconsistencies in V.H.'s description of the incident met the legal and evidentiary requirements for perjury. The court recognized that V.H. was a scared witness and lacked knowledge of legal terminology. The district court concluded that V.H. "told her story and it may have not been precise, it may have not been completely 100 percent the same every time, but to me that's just what—a normal witness tying—your statements sometimes change somewhat." The record demonstrates that despite a different characterization in her petition, V.H. consistently identified the touching in the case as W.O. grabbing her buttocks. The district court's decision is supported by substantial competent evidence.

Affirmed.