(42 P.3d 157)
No. 85,417

VALERIE S. TROLINGER, *Appellee*, v. ARBY LEE TROLINGER, *Appellant*.

Opinion filed October 12, 2001.

*Ronald W. Nelson,* of Rose & Nelson, of Overland Park, for the appellant.

No appearance by the appellee.

Before GREEN, P.J., LEWIS, J., and JACK L. BURR, District Judge, assigned.

LEWIS, J.: Arby Lee Trolinger filed an action seeking a divorce from appellee Valerie S. Trolinger. Approximately 1 week later, Valerie filed a protection from abuse action under the Protection from Abuse Act, K.S.A. 60-3101 *et seq.* The trial court issued a protection from abuse order, restraining Arby from abusing, threatening to abuse, harassing, molesting, or in any way disturbing the peace of Valerie or her minor child. The order went on to state that Arby should have no contact with Valerie. Arby appeals from the protection from abuse order.

It is rare that we see an appeal from the issuance of a protection from abuse order. This is probably due to the fact that such things are normally transitory in nature and operate for a limited amount of time. Be that as it may, we have before us an action in which it is argued that the trial court had no authority under the evidence to issue the order in question.

We pause to note that this court is extremely reluctant to involve itself in something as subjective as an order for protection from abuse. These matters frequently develop in emergency situations, and the ultimate judgment of the trial court in a case such as this may literally involve risk to the lives of all or some of the parties involved. Our view of these cases is a view based on the printed word as it comes to us in the record on appeal. We are quite reluctant to substitute our judgment based on that record for the much more objective judgment of the trial judge, who is there in the courtroom and is able to view the parties and make a real-life judgment on the situation that exists. It is only in a case of the most egregious breach of the trial court's discretion that this court would become involved in second-guessing a trial court's decision in entering a decree protecting one of the parties to a domestic relations action from abuse.

With the veracity expressed above and the background, we proceed to the merits of Arby's arguments on appeal.

Valerie never specifically testified that Arby had done great physical harm to her, but she did testify that he had frightened her and that she was afraid of him. According to Valerie, Arby had made a point of having a discussion with her and told her how he could make bodies disappear. According to Valerie, Arby kept loaded weapons in the home, and the Oklahoma authorities had investigated him for possible involvement in the disappearance of his former wife. On one occasion, Valerie attempted to call her son while she was at home and found the phone had been disconnected, a car key was missing from her keyring, and the garage was padlocked.

Valerie testified about regular instances in which Arby would restrain her against her will by squeezing her to a point where she feared he was going to crack one of her ribs. She also testified that

Arby had hit her son. According to Valerie, she was constantly in fear that Arby would do bodily injury to her and to her son.

Arby basically denied everything. He admitted he kept loaded guns around the house and that he had told Valerie about his missing ex-wife and even admitted he had discussions with Valerie about how to "get rid of bodies." However, Arby had peaceful and reasonable explanations to give for all of these incidents. He admitted to hitting Valerie's son but claimed the three incidents were spankings and approved by Valerie.

As to Valerie's testimony concerning the fact that Arby frequently squeezed her to the point she feared he was going to crack a rib, Arby gave an equally benevolent explanation. According to Arby, he was only hugging her and had no intention of causing her injury.

After hearing the testimony of both parties, the trial judge concluded that Valerie

"established by a preponderance of evidence that there was intentional bodily injury in the form of squeezing. That there were—and that the defendant attempted to cause bodily injury to the plaintiff. And it's on that basis that I am granting the petition for protection from abuse." .

After further discussion, the judge also ruled:

"[T]he defendant is restrained and shall not abuse, threaten to abuse, harass, molest or anyway disturb the peace of the plaintiff or her minor child wherever they may be. Defendant shall have no contact with the plaintiff [and the child]."

The judge went on to clarify the restraining order and its relationship to Arby's stepson as follows:

"Well, I didn't make a—I guess I didn't make a finding one way or another. There were allegations that the child was—there was physical hitting of the child as well and, therefore, I think it's appropriate to have a no contact order concerning him as well.

. . . .

"I am going to find that by a preponderance of the evidence that there was intentional—that there was bodily harm against [the stepson] by the defendant."

Arby argues that the trial court erred in basing its orders on the squeezing of Valerie and on his hitting her minor son. It is his position that the orders had to be based on a finding of substantial

physical pain or impairment to support the conclusion that Arby abused Valerie and her son by intentionally causing bodily injury under the facts.

Arby does not challenge the trial court's findings of fact but rather its conclusion of law.

K.S.A. 2000 Supp. 60-3102 provides in part:

"As used in this act, 'abuse' means the occurrence of one or more of the following acts between persons who reside together, who formerly resided together or who have or has had a child in common:

"(a) Intentionally *attempting* to cause bodily injury, or intentionally or recklessly causing bodily injury.

"(b) Intentionally placing, by physical threat, another in fear of imminent bodily injury." (Emphasis added.)

We conclude that Arby's argument is without merit since an order may be based on intentionally attempting to cause bodily injury. We conclude there was substantial competent evidence in the record that Arby at the very least attempted to cause bodily injury to Valerie. There was no requirement under the law that Valerie had to prove that Arby actually drew blood or caused her bodily injury before she was entitled to the order.

Arby bases his argument on the decision of *Paida v. Leach*, 260 Kan. 292, 301, 917 P.2d 1342 (1996). In that case, the court concluded that bodily injury under the Protection from Abuse Act requires a finding of substantial pain or impairment. However, that definition is not a broad one and must be confined to and considered within the context of the rest of the opinion.

The court in *Paida* was faced with drawing a line between acceptable parental discipline of a child and unacceptable parental conduct which causes more than minor or inconsequential injury to the child. In particular, the court was concerned with the boundary of State intrusion and sought to limit trial court discretion and intervention in the way parents discipline their children. The court specifically recognized:

"The discipline of children and the abuse of spouses share little common ground. Because these disparate family interactions fall under the same legislative enactment, *the trial court can and should determine in light of all the circumstances in each individual case whether the plaintiff has shown abuse by a preponderance*

*of the evidence.* Those circumstances will include the age of the alleged victim and his or her relationship to the alleged abuser. Neither reason nor the limits clearly expressed by the legislature in the Act permits a trial court judge to overlook the infliction of bodily injury. However, the Act is not intended to dictate acceptable parental discipline or unnecessarily interfere in the parent/child relationship absent a clear need to protect the child." (Emphasis added.) 260 Kan. at 300.

As will be noted, the court in *Paida* indicated that the trial court needs to determine whether a plaintiff has shown abuse in light of the circumstances in each individual case. *Paida* does not establish a bright line rule that the victim must actually show that he or she has shed blood or suffered real physical pain in order to obtain an order which may avoid that circumstance.

We hold the trial court was not required to find substantial pain and impairment before concluding that Valerie was abused as a matter of law. The trial court is required to look at all the circumstances and render a finding of abuse if it is shown by a preponderance of the evidence. We conclude the trial court did that in this particular matter. Its finding of attempted abuse is sufficient to support the issuance of the order in this case.

Arby then argues the order was in error when it restrained him from coming around his stepson. The trial court based its ruling concerning the stepson on the physical hitting done by Arby. Arby portrays these incidents as spankings.

As pointed out earlier, it is very difficult for this court to make a factual determination in a case of this nature. We understand that people's lives and well-being are concerned and that the trial court is the best judge as to whether there has been abuse sufficient to require an order of the type entered in this case. The trial court is the sole arbitrator as to the credibility of the witnesses and must determine which witness it believes. As we read this trial court's decision, it did not believe Arby's explanation that these hittings were merely spankings. It did believe that Arby had inflicted pain or impairment on his stepson and that the child needed to be protected from Arby by the order issued. We conclude that under all the circumstances of this case, the trial court did not err in finding that Valerie had shown abuse of her son by Arby by a preponder-

ance of the evidence. We, therefore, affirm the trial court's order insofar as it relates to the stepson.

One problem with Arby's argument is that it literally suggests that we apply a different standard to his stepson than we have applied to Valerie. This is not a workable solution; Valerie and her son are a family, they live together, and to apply different standards would simply undermine the order issued to one or the other of the family group. We do not intend to do that, and we believe the trial court can look at the familial relationships and the problems which might be caused by applying one standard to Valerie and another to her son.

In any event, we find no error with the order for protection from abuse insofar as Valerie or her son are concerned.

Arby finally argues that the alleged actions he took against Valerie and her son were not recent in time and did not present an ongoing risk to Valerie and her son and, because of that fact, did not warrant the issuance of an order for protection from abuse. We disagree.

K.S.A. 60-3101(b) provides that the Act shall be liberally construed "to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims."

We have no intention of interfering with the ability of the trial court to protect victims of domestic violence. The fact that the actions testified to may not be recent in time and may not present an ongoing risk are factors which must be considered by the trial court in determining whether it is appropriate to issue an order for protection from abuse. We believe it would be contrary to the intent of the law to hold that no order could be issued unless the acts of violence were recent and presented an immediate threat to the victims who seek protection.

The statutory scheme is designed to promote protection of the victims and make access to the court easy and prompt. For that reason, the trial court is simply charged to exercise its discretion in light of the circumstances presented. The circumstances presented would include such factors as those Arby now insists must be proven to obtain an order. We hold that the Act does not require

focusing on the timing of either recent abuse or future risk as a condition precedent to the issuance of an order for protection from abuse.

Affirmed.