NOT DESIGNATED FOR PUBLICATION

No. 113,634

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

IN THE INTEREST OF
M.L., a minor child, by and through
her next friend and natural mother, T.G.,
*Appellee*,

v.

T.W.L.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; VAN Z. HAMPTON, judge. Opinion filed March 4, 2016. Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Sarah Doll Heeke*, of Doll Law Firm, LLC, of Dodge City, for appellee.

Before HILL, P.J., MCANANY and ARNOLD-BURGER, JJ.

*Per Curiam*:  T.L. appeals from a protection from abuse (PFA) order entered pursuant to the Protection from Abuse Act, K.S.A. 60-3101 *et seq*. The district court found that T.L. had abused M.L., his 14-year-old daughter, under the definition of abuse provided in K.S.A. 60-3102(a). T.L. argues the evidence presented at trial did not establish that he abused M.L. as so defined. But under our standard of review, we find no error in the district court's ruling and, therefore, affirm. We also grant the motion of

1

M.L.'s mother for attorney fees pursuant to Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72).

M.L.'s parents were divorced, and M.L. was living with her mother. T.L. had regular scheduled parenting time with his daughter. T.L. is a teacher at the middle school where M.L. is a student. On the date of this incident, a dispute arose between T.L. and M.L. regarding her attendance at after-school soccer practice. After practice, T.L. drove M.L. to his home. Along the way, T.L. told M.L. that she was grounded because she had treated him in a disrespectful manner.

Upon arriving at T.L.'s home, he demanded of M.L., who was still in the back seat of the vehicle, that she turn over her phone and iPod. M.L. gave up her phone but refused to give up her iPod. T.L. reached back and tried to force the iPod from M.L.'s hands. As M.L. attempted to get out of the vehicle, T.L. grabbed a fist full of M.L.'s hair and pulled her back inside. M.L. scratched at T.L.'s face in an attempt to get him to let go. After M.L. dropped the iPod, T.L. continued to pull her hair and punched the side of M.L.'s face three or four times. M.L. testified that after he hit her the first time, she felt "dizzy." When M.L. got out of the car she thought she "was gonna pass out."

M.L. told T.L. that she was going to call the police, and T.L. responded that "he was going to beat [M.L.] in front of them." M.L. testified she was afraid of her father so she began walking, and her mother picked her up a few blocks away. M.L.'s mother testified that M.L. was "disoriented" and "bawling" when she was picked up. When M.L. got into her mother's car, a "big gob" of her hair fell out. M.L. had a lump on the side of her head, which continued swelling throughout the evening.

Later that evening, M.L. attended a regularly scheduled counseling session. Her therapist observed that M.L. was crying, tearful, and scared. M.L. had a bump on the side of her head, and the therapist observed M.L.'s hair on her sweatshirt and on the chair

2

where she was seated. The therapist reported the incident to the Department for Children and Families.

A few days later M.L.'s mother filed a verified petition on behalf of M.L. for a PFA order. The district court granted a temporary PFA order, and the final PFA hearing was held a couple of weeks later. At that hearing, the district court found that T.L.'s conduct resulted in bodily injury to M.L. as defined in K.S.A. 60-3102(a) and entered its final PFA order. T.L. appealed.

On appeal, T.L. contends the district court's PFA order was not supported by substantial competent evidence because there was no evidence (1) T.L. had threated M.L. with imminent bodily injury, (2) T.L. had intentionally or recklessly inflicted bodily injury on M.L., or (3) T.L. had intentionally or recklessly attempted to inflict bodily injury on M.L.

In our review, we are constrained by the fact that we do not reweigh the evidence or make credibility determinations, but rather view the evidence in the light favoring M.L., the party who prevailed below. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011). In doing so, we must accept as true all evidence and inferences that support or tend to support the district court's findings, and we must disregard all conflicting evidence. *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709-10, 216 P.3d 170 (2009).

The PFA Act permits a parent to seek relief on behalf of a minor child by filing a verified petition alleging abuse by a household member. K.S.A. 2015 Supp. 60-3104(b). Abuse is defined as the occurrence of one or more of the following acts: (1) intentionally attempting to cause bodily injury or intentionally or recklessly causing bodily injury; or (2) intentionally placing, by physical threat, another in fear of imminent bodily injury. K.S.A. 60-3102(a).

3

The Act requires the district court to conduct a hearing at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. K.S.A. 2015 Supp. 60-3106(a). Our Supreme Court has defined "a preponderance of the evidence" to mean "'evidence which shows a fact is more probably true than not true.'" *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008).

PFA orders are by their nature subjective judgments, and the district court is in the best position to know when they are warranted. *Jordan v. Jordan*, 47 Kan. App. 2d 300, 306, 274 P.3d 657 (2012). A panel of this court articulated:

> "We are quite reluctant to substitute our judgment based on that record for the much more objective judgment of the trial judge, who is there in the courtroom and is able to view the parties and make a real-life judgment on the situation that exists. It is only in a case of the most egregious breach of the trial court's discretion that this court would become involved in second-guessing a trial court's decision in entering a decree protecting one of the parties to a domestic relations action from abuse." *Trolinger v. Trolinger*, 30 Kan. App. 2d 192, 194, 42 P.3d 157 (2001), *rev. denied* 273 Kan. 1040 (2002).

Additionally, we note that the PFA Act is to be construed liberally to promote the protection of victims. K.S.A. 60-3101(b).

Relying on *Paida v. Leach*, 260 Kan. 292, 300, 917 P.2d 1342 (1996), T.L. argues that because the alleged act of abuse in this case occurred between parent and child, a heightened finding of bodily injury is required. Applying that standard, he contends the injuries M.L. sustained here were minor and inconsequential.

In *Paida*, our Supreme Court concluded that under the PFA Act bodily injury arising from parental discipline of a child must involve substantial pain or impairment. 260 Kan. at 301. The injuries in *Paida* consisted of a teenage son's sore shoulder and a teenage daughter's small cuts to her lips from her braces after her father washed her

4

mouth out with soap. Our Supreme Court concluded that the PFA Act is not intended to interfere with acceptable parental discipline in the parent/child relationship. Rather, the State's intrusion should be limited to instances in which a parent's actions cause more than the minor or inconsequential injuries sustained here. 260 Kan. at 300-01.

T.L. asserts that the injuries suffered by M.L. amounted to minor or inconsequential injuries and a PFA was not warranted in this incident of parental discipline. But *Paida* did not establish a bright-line rule for determining abuse that exceeds the bounds of proper parental discipline. Rather, the question of abuse is considered in light of the circumstances of each individual case. *Trolinger*, 30 Kan. App. 2d at 197.

In another case cited by T.L., *Barnett v. Barnett*, 24 Kan. App. 2d 342, 347, 350-51, 945 P.2d 870 (1997), a majority panel of this court found that the record did not support a finding of "bodily injury" in the case of a teenage boy who sustained a welt on his back and a reddened area around his eye from being disciplined by his father. But in both *Paida* and *Barnett*, a key factor was the context in which the injuries were sustained. In both cases, the reviewing court found that the injuries were sustained during proper parental disciplining.

But here, M.L.'s injuries were not sustained as a result of her father's proper disciplinary measures. T.L. had already told M.L. that she was grounded for her misbehavior. Viewing the evidence in the manner in which we are required to, there is substantial evidence to support the conclusion that T.L. was not imposing parental discipline when he pulled out M.L.'s hair and repeatedly struck her in the head with his fist, but rather was simply striking out at M.L. in anger.

T.L. also argues that there is no substantial competent evidence that he threatened M.L. But the district court's PFA order was based on a finding of abuse, not a finding that T.L. threatened future abuse.

The district relied on two acts to support its finding of abuse: (1) T.L. pulled out M.L.'s hair; and (2) T.L. struck M.L. on the side of the head, causing swelling and a lump. T.L. asserts that these acts did not cause M.L. substantial pain and did not rise to the level of abuse as contemplated by the statute.

The district court ruled that T.L.'s actions went beyond parental discipline. Other than claiming that he spanked M.L. on the rear after he let go of her hair, T.L. did not provide any evidence that he intended to discipline M.L. in pulling out her hair and striking her on the side of the head with his fist three or four times.

Finally, T.L. contends that the district court did not make a specific finding that he acted intentionally or recklessly. But the district court recognized the correct definition of abuse under K.S.A. 60-3102(a) before making its findings, and there is sufficient evidence to establish that T.L. acted intentionally or recklessly when he reached into the backseat and engaged in the physical altercation.

We do not reweigh the contradictory evidence in the record but view the evidence in the light favoring M.L., the prevailing party. Applying that standard, we conclude that substantial competent evidence supports the district court's finding that T.L. intentionally or recklessly caused bodily injury to M.L.

M.L.'s mother, the appellee in this matter, has moved the court for attorney fees for this appeal pursuant to Supreme Court Rule 7.07(b) (2015 Kan. Ct. R. Annot. 72), which allows fees on appeal "in a case in which the district court had authority to award attorney fees." Under the PFA Act, K.S.A. 2015 Supp. 60-3107(a)(7), the district court is

6

authorized to award fees to a prevailing plaintiff. Appellee has submitted an affidavit from her counsel indicating that 8.5 hours were spent in handling this matter on appeal at an hourly rate of $175. We find that an award of attorney fees is appropriate here and that the time and charges here are reasonable. Appellee is awarded attorney fees from T.L. of $1,487.50.

Affirmed and attorney fees awarded.