NOT DESIGNATED FOR PUBLICATION

No. 125,893

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

J.P. III,
*Appellant*,

v.

G.S.,
*Appellee*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; ELIZABETH HENRY, judge pro tem. Submitted without oral argument. Opinion filed October 25, 2024. Affirmed in part and dismissed in part.


*J.P. III*, appellant pro se.


*Anita Settle Kemp*, of Wichita, for appellee.


Before GARDNER, P.J., GREEN and HILL, JJ.


PER CURIAM: J.P. appeals the district court's denial of his petition for a protection from stalking (PFS) order against a nearby property owner, G.S. J.P. broadly claims that the district court violated his right to a fair trial, wrongly denied his PFS order, and erroneously imposed sanctions against him. Having reviewed the record, we reach the merits of the ruling on J.P.'s petition for a PFS order but dismiss all other arguments as unpreserved or for lack for jurisdiction.

1

*Factual and Procedural Background*

G.S. and J.P. own neighboring properties in Wichita. G.S. owns and manages rental properties in their neighborhood, and J.P. owns property and resides there. Given this proximity and other factors, J.P. and G.S. have had many encounters over the last several years and have reported several of them to the police. These interactions and reporting eventually spurred litigation as both men petitioned the district court for PFS orders against each other in separate cases.

G.S. filed first and got PFS orders against J.P. in 2020. Both parties' briefs rely on the facts surrounding G.S.'s initial PFS filings. This court reviewed one of G.S.'s previous PFS cases in *G.S. v. J.P.*, No. 124,545, 2023 WL 2194550 (Kan. App. 2023) (unpublished opinion). We refer the reader to that opinion for a summary of the early litigation between J.P. and G.S.

During ongoing litigation in that case, J.P filed a PFS petition against G.S., requesting ex parte temporary and final orders in September 2020 to restrain G.S. from:

- " abusing, molesting or interfering with [J.P.'s] privacy or rights";
- "following, harassing, telephoning, contacting or otherwise communicating with [J.P.]";
- "committing or attempting to commit a sexual assault upon [J.P.]";
- "following, harassing, telephoning, contacting, recruiting, harboring, transporting, or committing or attempting to commit human trafficking upon [J.P.]";
- "entering or coming around [J.P.'s] residence or area"; and
- committing "other" acts.

On October 17, 2022, J.P. moved to modify his initial petition and for relief from an order in a separate case which extended G.S.'s PFS order to preclude J.P from taking

pictures or videos of G.S. The district court denied the requests related to G.S.'s PFS order against J.P. but allowed J.P. to "present whatever evidence" he wanted to support his claim. In support of his petition, J.P. later described three incidents, occurring on September 9, 2021, and April 9 and 10, 2022. The district court granted J.P. a temporary PFS order in September 2022 and set the matter for a later hearing. The district court added that J.P. had a history of raising irrelevant claims regarding previous PFS orders obtained by G.S. in separate cases, and it ordered J.P. not to relitigate those rulings.

J.P. testified at the October 18, 2022 hearing and presented testimony from seven other witnesses. These witnesses included:

- G.S.;
- Officers Charles R. Kimple, Daniel Harty, and Brent Johnson who had responded to or investigated reports from G.S. and J.P,;
- Detective Jordan Siemiller, assigned to investigate a report of forgery from J.P., alleging that G.S. forged a statement and signature by a third-party victim, Beauregard Daniel, to support his PFS claims;
- Brian Cavin, an ex-neighbor to J.P., who J.P. accused of being a part of a conspiracy with G.S. to wrongly obtain a PFS order against J.P. to harass him; and
- Roberta Hein, one of G.S.'s past tenants.

J.P. also admitted several exhibits: a picture that he took of G.S. showing G.S. using his phone to take a picture of J.P.; and two recordings of emergency calls G.S. had made to police on April 9 and 10, 2022. J.P. also unsuccessfully tried to admit comments that the district court had allegedly made during ex parte communications in a separate case in 2020.

G.S. testified in his defense and called three witnesses, Kimple, Kyle Gallegos, and Rick Iowa. G.S. also admitted and published two videos related to the April 10

incident, which he also described in his testimony. J.P.'s cross-examination of G.S. suggested that G.S. prolonged that interaction by failing to drive away from the incident as quickly and efficiently as possible.

The district court ultimately found that J.P. presented no credible evidence to support his petition for a PFS order. It explained that in some cases, it grants protection orders to both parties to help ensure that the parties might obey the orders. But the district court found this type of ruling inappropriate under the circumstances. It found that J.P. simply "confabulated [a] huge conspiracy" that G.S. controlled other people and their conduct toward him. And J.P. provided no basis for his allegation that G.S. was a threat to him; he had denied on "numerous occasions" that he ever feared G.S.

J.P. timely appeals the district court's order denying his petition for PFS.

*Analysis*

J.P. raises several claims on appeal. Liberally construing and highly summarizing those claims, J.P. asserts that the district court: (1) violated his right to a fair trial; (2) abused its discretion or simply erred in denying his petition; and (3) erred in granting G.S.'s motion for sanctions. We address this latter claim first.

*Did the District Court Err in Granting G.S.'s Motions?*

J.P. argues that the district court erred by granting G.S.'s motion for sanctions or attorney fees. G.S.'s sanctions motion argued that J.P. had filed his petition to harass him and cause unnecessary delays. He attached an affidavit from Kemp and a description of her work in defending this case. Based on Kemp's accounting, G.S. requested an attorney fees award of $5,000. After a hearing, the district court awarded G.S. attorney fees of $3,000.

But before we can reach the merits of this claim, we must first ask whether we have jurisdiction to do so. The right to appeal is statutory, and appellate jurisdiction exists only if a party files an appeal in the manner prescribed by Kansas statutes. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). This court has a duty to question the existence of jurisdiction on its own initiative. If the record shows that jurisdiction does not exist, we must dismiss the appeal. 304 Kan. at 84-85.

In civil cases, our statute requires a notice of appeal to designate the judgment or part of it appealed from: "The notice of appeal shall specify the parties taking the appeal; shall designate the judgment or part thereof appealed from, and shall name the appellate court to which the appeal is taken." K.S.A. 2023 Supp. 60-2103(b). See *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 293 Kan. 633, 637-38, 270 P.3d 1074 (2011).

J.P. filed his notice of appeal on October 28, 2022. It references only the district court's order denying J.P's petition for a PFS order against G.S. It does not refer to the district court's order imposing sanctions in favor of G.S. Because our jurisdiction is limited to issues arising from the ruling identified in the notice of appeal, and the notice of appeal does not include the sanctions order, we must dismiss J.P.'s claim challenging the sanctions order. See *State v. Huff*, 278 Kan. 214, 217, 92 P.3d 604 (2004).

That same rationale means we cannot address any other orders not stated in the notice of appeal. So we lack jurisdiction to address J.P.'s arguments that the district court erred by previously granting G.S. a PFS order against J.P.

An independent reason compels that same conclusion as to the sanctions order. This court has jurisdiction to consider only rulings from which we have a timely notice of appeal. Our appellate courts thus cannot consider judgments made after the notice of appeal is filed. See *Ponds v. State*, 56 Kan. App. 2d 743, 752-54, 437 P.3d 85 (2019). J.P.

filed his notice of appeal on October 28, 2022, but the district court did not enter its decision on G.S.'s motion for sanctions until November 21, 2022. Yet J.P. did not file a new or amended notice of appeal after the sanctions ruling, so we lack jurisdiction over his arguments challenging the district court's sanctions order.

We thus do not reach J.P.'s arguments that the district court erred by granting G.S.'s motion for sanctions. See *In re Estate of Lentz*, 312 Kan. 490, 504, 476 P.3d 1151 (2020) (court that dismisses for lack of jurisdiction should not opine on merits). Nor do we reach any other arguments not included in the notice of appeal, including J.P's argument that the district court erred by granting G.S. a PFS order against J.P.

*Did the District Court Violate J.P.'s Right to a Fair Trial?*

We next address J.P.'s various claims that he did not receive a fair trial because errors precluded him from presenting his case at the hearing on his petition. But J.P. raises this claim for the first time on appeal. Issues not raised before the district court cannot be raised on appeal. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 801, 466 P.3d 1207 (2020). The district court was in the best position to rectify such errors, had J.P. brought them to its attention.

There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008). But J.P. does not argue that any of these exceptions apply or explain why he did not make this argument in the district court, as required under Supreme Court Rule 6.02(a)(5) (2024 Kan. S. Ct. R. at 36). In *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015), and *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014), our Supreme Court warned that Rule 6.02(a)(5) would be strictly enforced, that  litigants who disregard this rule would risk a ruling that the issue is improperly briefed, and that the issue would be deemed waived or abandoned. See *State v. Daniel*, 307 Kan. 428, 430,

410 P.3d 877 (2018). We note that even if J.P. had argued for our review under an exception, we are under no obligation to review an unpreserved claim. *State v. Rhoiney*, 314 Kan. 497, 500, 501 P.3d 368 (2021). We thus find J.P has abandoned or waived his claims of an unfair trial.

*Did the District Court Abuse Its Discretion in Denying J.P.'s Petition?*

We next address the merits of J.P.'s claim that the district court erred by denying his petition for a PFS order against G.S. The Protection from Stalking Act, K.S.A. 2023 Supp. 60-31a01 et seq., requires a plaintiff to prove his or her allegation of stalking by a preponderance of the evidence. K.S.A. 2023 Supp. 60-31a05(a). "Stalking" and the related terms "harassment" and "course of conduct" are defined in K.S.A. 2023 Supp. 60-31a02(d). When considered together, these definitions provide that a valid stalking claim requires proof of:

- at least two separate acts;
- directed at a specific person;
- intentionally done;
- showing a continuity of purpose that would cause a reasonable person to suffer substantial emotional distress;
- placing the person in reasonable fear for his or her safety;
- through conduct that seriously alarmed, annoyed, tormented, or terrorized the person; and
- that served no legitimate purpose and was not constitutionally protected. *C.M. v. McKee*, 54 Kan. App. 2d 318, 322, 398 P.3d 228 (2017).

Our courts construe the Act liberally to protect victims of stalking and to facilitate access to judicial protection for those victims, whether they are represented by counsel or

are pro se, as is J.P. K.S.A. 2023 Supp. 60-31a01(b); see also *Wentland v. Uhlarik*, 37 Kan. App. 2d 734, 736, 159 P.3d 1035 (2007) (stalking act construed liberally to protect victims).

J.P. argues that this court's review of the district court's decision is unlimited. But by finding that J.P. failed to sustain his burden of proof, the district court made a negative finding. We thus use the following standard:

> "'The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice, the finding of the trial judge cannot be disturbed.' *Cresto v. Cresto*, 302 Kan. 820, Syl. ¶ 7, 358 P.3d 831 (2015).
>
> "We do not reweigh the evidence or make our own credibility determinations, and we generally view the evidence in the light most favorable to the party who prevailed in the district court.' *Kerry G. v. Stacy C.*, 53 Kan. App. 2d 218, 221-22, 386 P.3d 921 (2016)." *R.W. v. C.M.*, No. 123,469, 2022 WL 2904029, at *12 (Kan. App. 2022) (unpublished opinion).

See *M.G. v. C.H.*, No. 124,450, 2023 WL 5668659, at *4 (Kan. App. 2023) (unpublished opinion).

Most of J.P.'s claims attack the district court's allegedly erroneous issuance of G.S.'s PFS orders. But because those claims are not included in the notice of appeal, we have no jurisdiction to address them, as we found above.

But J.P.'s brief, read liberally, also argues that the district court ignored undisputed evidence and was biased when deciding his petition against G.S. J.P. argues that the evidence undisputedly shows: (1) G.S. falsely reported that he had a PFS order against J.P. because that order expired after G.S. failed to appear at a hearing; (2) G.S. falsely

reported that J.P. once tried to hit G.S; (3) G.S. once approached J.P. aggressively and got uncomfortably close to him; and (4) the previous PFS orders and related factual findings favoring G.S. biased the district court.

Yet contrary to J.P.'s argument, little, if any, undisputed evidence was admitted at trial. The parties generally agreed that they had had several negative interactions with each other and had taken pictures and videos of these interactions. But they disputed almost every other detail about the incidents. Each disputed details and broadly accused the other of having initiated and accelerated the interactions, rather than ending them and avoiding new disputes. Many facts were controverted.

The district court, as the sole arbitrator of the witnesses' credibility, properly considered those controverted facts when making its decision. See *Trolinger v. Trolinger*, 30 Kan. App. 2d 192, 197, 42 P.3d 157 (2001). And this court "cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." *Cresto v. Cresto*, 302 Kan. 820, Syl. ¶ 7, 358 P.3d 831 (2015). The district court is also "presumed on appeal to have found all facts necessary to support its judgment." *Wentland*, 37 Kan. App. 2d at 741.

We have reviewed the evidence from the hearing but need not repeat it here. One failing stands out. J.P. never claimed in the district court that G.S. placed him in reasonable fear of his safety, as is statutorily required to prove his claim. See K.S.A. 2023 Supp. 60-31a02(d). The closest testimony was from G.S.'s past tenant, Hein, who testified that on April 16, 2022, she saw G.S. approach J.P. on the street and force J.P. to back up a few steps. But Officer Johnson testified that when he suggested to J.P. that he seek a PFS order against G.S. for his own protection, J.P. responded that he "didn't believe that he needed a protection . . . from stalking order or protection from abuse order . . . [because] he was only being attacked mentally and professionally." Although J.P. challenged that testimony, Johnson explained that J.P. can be heard making nearly

9

identical statements on a video of the exchange. And before J.P. ended his testimony, the district court asked him to state "anything that [G.S.] has done that [made] you feel threatened." J.P. responded: "The things that he has done is infiltrating the neighborhood, lying to police officers, telling them I'm a threat."

J.P. now suggests that G.S. "put [him] in harm's way" by making false reports to the police because he could have been "arrested or worse." He also states that G.S. "harassed" him by "[p]ointing something" at him. But that "something" could have been a cell phone, a camera, or another innocuous item. None of this creates a reasonable inference that G.S. placed J.P. in "reasonable fear for his . . . safety" as required under the Act. See K.S.A. 2023 Supp. 60-31a02(d). Nor does J.P. argue that any evidence at the district court hearing shows that he had the necessary reasonable fear. The district court also found that J.P. repeatedly denied being afraid of G.S. The district court thus correctly concluded that J.P. failed to prove the elements of stalking under K.S.A. 2023 Supp. 60-31a02. As a result, the district court had to deny J.P's petition for a PFS.

J.P. does not show an arbitrary disregard of undisputed evidence or show that the district court relied on some extrinsic consideration such as bias, passion, or prejudice to reach its decision. So under our standard of review, we cannot disturb the district court's finding. We thus affirm the order denying J.P.'s petition for a PFS.

*Should We Award G.S. Attorney Fees Because of a Frivolous Appeal?*

Lastly, we address G.S.'s motion for attorney fees on appeal. After briefs were submitted, G.S. moved for appellate attorney fees together with the required affidavit of his appellate counsel and an itemization of her fees under Supreme Court Rule 7.07(b)(2) (2024 Kan. S. Ct. R. at 52). J.P. did not respond to that motion.

10

Generally, a Kansas court cannot "award attorney fees unless a statute authorizes the award or there is an agreement between the parties allowing attorney fees." *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013). Rule 7.07(c) allows us to assess fees against an appellant when an appeal is frivolous or motivated by the desire to harass or delay. But it does not require us to do so.

G.S. contends that J.P.'s appeal is "without question frivolous and filed only to harass [G.S.] and delay resolution." But we are not persuaded. An appeal is frivolous if it fails to present any "justiciable question" and is "readily recognized as devoid of merit." *Blank v. Chawla*, 234 Kan. 975, Syl. ¶ 5, 678 P.2d 162 (1984). Because Rule 7.07(c) requires a finding that "an appeal" is frivolous, the presence of even a single nonfrivolous issue places the entire appeal outside the definition of frivolity. See *Porter v. Stormont-Vail Hospital*, 228 Kan. 641, 647-48, 621 P.2d 411 (1980) (denying attorney fees for appeal that was not totally devoid of merit). That is the case here.

As shown by our analysis of the merits on the PFS order, we do not share G.S.'s perception that all issues J.P. raised in this appeal are frivolous, although the district court correctly ruled that J.P. failed to meet his burden of proof. Nor has G.S. shown that the appeal was motivated by the desire to harass or delay, rather than to obtain redress for a perceived error. Accordingly, G.S.'s counsel is not entitled to attorney fees under the sole legal theory she argues.

We thus affirm the district court's decision on J.P.'s petition for a PFS order against G.S., dismiss all J.P.'s other claims, and deny G.S.'s motion for attorney fees.

Affirmed in part and dismissed in part. Motion for attorney fees denied.