NOT DESIGNATED FOR PUBLICATION

No. 129,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

S.S.,
*Appellant*,

v.

T.S.,
*Appellee.*

MEMORANDUM OPINION

Appeal from Hodgeman District Court; KENTON GLEASON, magistrate judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Terry J. Malone*, of Williams-Malone, P.A., of Dodge City, for appellant.

*Sunny A. Schroeder,* of Cimarron, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: S.S. appeals the district court's denial of her petition for protection from abuse (PFA) filed on behalf of herself and her minor children. She asserts the district court erred by failing to find T.S. presented a danger to the children. After our review of the record, we find S.S. has not met her burden to show a bodily injury qualifying as abuse. Therefore, we affirm.

1

S.S. filed a PFA petition on behalf of herself and her minor children against the children's father, T.S., under K.S.A. 60-3101 et seq. For simplicity while maintaining anonymity, A.S. (born in 2016) will be referred to as Abby, A.S. (born in 2018) will be referred to as Aaron, and B.S. (born in 2021) will be referred to as Bethany. S.S. alleged T.S. caused her and the children bodily injury and placed her and the children in fear of imminent bodily injury. S.S. asserted T.S. "charged our daughter and whipped her with a belt repeatedly with no reason behind doing it." She requested that she be granted sole legal custody and T.S. have no contact with his children. The district court granted a temporary PFA order.

On May 30, 2025, the district court held a hearing on the final PFA order.

*S.S.'s testimony*

S.S. testified that she had been married to T.S. and had three children with him. Despite their divorce, the parties were still living together and had been living together "[o]n and off for the past 10 years." They lived together "[m]ost of the time" after their divorce.

S.S. explained that the incident leading to the PFA petition occurred about 7 p.m. on May 1, 2025. S.S., T.S., Abby, and Bethany were sitting on the couch; Aaron was watching television in another room. Abby whined about being told to shower because she wanted Aaron to shower first. T.S. "yelled" at Abby to shower. Abby walked into the next room and told Aaron to get out of her way.

S.S. testified, "Then, I hear a thud and a cry, and [Aaron] crying. [T.S.] stood up, runs into the next room. I thought he was going to control the situation. 'Kids, you know,

2

don't do that.'" Instead, S.S. heard "the belt come out of [T.S.'s] pants" and "heard three whips of the belt." She testified that Abby "couldn't stand for two minutes." S.S. told the court she saw T.S. hitting Abby on the backside of her leg. S.S. said she heard two hits and saw the last one. S.S. helped Abby into the shower, and T.S. went to sleep "as if it was just another day."

Despite this interaction, S.S. and the children stayed at T.S.'s house that night. In support of her petition, S.S. admitted photographs of the backs of Abby's legs into evidence. She testified the photographs "show the marks from the belt."

On cross-examination, S.S. admitted that, during their divorce, she and T.S. agreed to shared parenting time. S.S. had her own residence but continued to stay with T.S. at his residence. S.S. and T.S. continued to have a sexual relationship. The week of the alleged incident was S.S.'s parenting time. Despite this, S.S. and the children stayed with T.S. from April 29 through May 1. S.S. explained that she and the children could not leave because they would have had to walk since she did not have a car.

S.S. admitted that, earlier on May 1, 2025, she asked T.S. if he was talking with another woman because she was under the impression that she and T.S. were still involved in a relationship. S.S. also acknowledged that she threatened T.S.'s custody of the children on April 29, 2025. This threat occurred before the incident. Through text message, she told him, "'You just not wanting to go court. But if you choose [another woman], that's the route we are going to go.'" She also threatened a PFA order.

*T.S.'s testimony*

T.S. testified that, despite the 50/50 custody arrangement in the divorce, the children started staying with him "about 80 percent of the time." During S.S.'s parenting

time, she often stayed at the house so that he could help her with the children. He described his relationship with S.S. as "[v]ery, very chaotic."

T.S. testified about S.S.'s behavior once she learned that he had a girlfriend. He stated that S.S. "threatened to take the kids away from me. Threatened to file a PFA. Anything, that if I were to move on, that I wasn't going to have the kids. So, I had to sit at home and be alone." According to T.S., S.S. verbally threatened PFA orders "all the time" and, before May 1, 2025, had never expressed concerns to T.S. about his being around the children. She brought the children over "all the time."

T.S. testified that, when the children deserved a spanking, "they received spankings." He asserted that S.S. "spanks our kids all the time." T.S. explained that he gives the children "many chances" to correct their behavior before resorting to spanking. T.S. testified that Abby had been acting up "for quite some time. And I had told her over and over to knock it off and start behaving, you know." He told the court that he watched Abby run and tackle Aaron. T.S. testified:

> "[Aaron] fell to the floor, he started crying. I got up instantly, went in there, and I said, '[Abby], we don't do that. You are getting a spanking.' There was a belt, sitting right there where we were at. I grabbed my belt; I did not take a belt off. I took it off and I spanked her butt. As she was, as I was attempting to spank her, she turned, and I accidently hit her legs. It was meant to be on her butt."

T.S. explained that he had attempted to correct Abby's behavior at least 10 times before Abby tackled Aaron. T.S. did not intend to hurt Abby, did not intend to leave any marks, and saw no marks when he was finished spanking Abby. T.S. estimated that the entire ordeal lasted 15 seconds from when Aaron got tackled until he completed spanking Abby.

T.S. testified none of the children attempted to avoid him or expressed any fear that he was going to hurt them. T.S. believed S.S. was attempting to weaponize the children. T.S. also explained that Abby was crying because she was in trouble, "Not hurt. No terror." Abby had not expressed any fear of T.S. Consequently, he believed the children were safe with him.

On cross-examination, T.S. testified he had never seen any marks on Abby's legs except in the admitted photographs. He reiterated that hitting Abby's legs was accidental but not her spanking. T.S. defined "abuse" as "beating" and explained that he "did not hit her hard enough to beat, considered a beating, whatsoever. I did not hit her to hurt her, I hit her to correct her behavior." He told the court he had "no problem spanking my kids when it's deserved." T.S. reiterated that he tried to correct Abby's behavior "7 or 8 times" before resorting to spanking her. T.S. also explained, "I would probably never use a belt again, I'd just use my hand," denied losing control of his emotions, and denied taking his anger toward S.S. out on Abby. T.S. said that he had not spanked Abby in more than six months. He testified both he and S.S. had previously spanked their children.

The district court denied the PFA petition, finding S.S. had not met her burden of proof. The journal entry denying the final protection from abuse order stated: "Lack of proof of the allegations by a preponderance of the evidence because: [S.S.] did not show that [T.S.] posed as a credible threat to her or their children." The district court denied the request for a final PFA order and vacated all orders in the case.

S.S. appealed.

ANALYSIS

On appeal, S.S. argues that she established Abby had been abused by T.S. and that the district court did not find that abuse did not occur. Because of this, she contends the district court "had a statutory duty" to grant the PFA petition and enter an order restraining T.S. from abusing the minor children. She suggests the district court erred when it found T.S. was not a credible threat to Abby at the time of the hearing because that is not the appropriate burden of proof. Instead, she asserts she only had the burden to prove abuse occurred and that she met that burden of proof.

T.S., in contrast, contends the district court properly found S.S. did not prove that the allegations of abuse occurred. In his view, because the district court did not specifically find that abuse occurred, the district court had no authority to issue a PFA order. He asserts there is a "disparity between spankings and physical abuse" and that "[t]he mere fact that a physical manifestation of corporal punishment exists is insufficient, in and of itself [and] cannot constitute abuse."

*Standards of Review*

Our court is "extremely reluctant to involve itself in something as subjective as an order for protection from abuse." *Trolinger v. Trolinger*, 30 Kan. App. 2d 192, 194, 42 P.3d 157 (2001). Due to the subjective nature of a PFA order, "the district court is in the best position to know when they are warranted." *J.B.B. v. J.L.B.*, 60 Kan. App. 2d 310, 317, 495 P.3d 1036 (2021). We therefore review the district court's denial of the PFA petition for an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re A.S.*, 319 Kan. 396, 400, 555 P.3d 732 (2024).

To the extent resolution of this issue requires a review of the sufficiency of the evidence, we do not reweigh the evidence or pass on the credibility of witnesses. "'If the evidence, . . . when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal. [Citation omitted.]'" *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

*Discussion*

The Protection from Abuse Act (Act), K.S.A. 60-3101 et seq., "shall be liberally construed to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding *pro se*." K.S.A. 60-3101(b).

K.S.A. 60-3102(a)(1) defines "'[a]buse'" as "[i]ntentionally attempting to cause bodily injury, or intentionally or recklessly causing bodily injury" to an intimate partner or household member. "Bodily injury" is not statutorily defined, although in the context of the parent/child relationship, "bodily injury under the Act requires a finding of substantial physical pain or an impairment of physical condition." *Paida v. Leach*, 260 Kan. 292, 301, 917 P.2d 1342 (1996). "[T]he Act is not intended to dictate acceptable parental discipline or unnecessarily interfere in the parent/child relationship absent a clear need to protect the child. The State's intrusion should be limited to injunctive relief where parental conduct causes more than minor or inconsequential injury to the child." 292 Kan. at 300-01.

Under K.S.A. 60-3104(b)(1), a parent of a minor child "may seek relief under the protection from abuse act on behalf of a minor child by filing a verified petition . . . alleging abuse by another intimate partner or household member." A hearing on a protection from abuse petition must be heard within 21 days of the filing of the petition.

7

At the hearing, "the plaintiff must prove the allegation of abuse by a preponderance of the evidence . . . ." K.S.A. 60-3106(a).

On appeal, S.S. correctly notes that she was not required to prove T.S. was a "credible threat" to Abby; her burden was to show abuse as defined in K.S.A. 60-3102(a)(1). See K.S.A. 60-3106(a). However, S.S. cites only the definition of abuse in K.S.A. 60-3102(a)(1) and the language of K.S.A. 60-3107(a)(1). She simply argues that when T.S. caused "pain and welts on [Abby's] bare legs," he caused bodily injury and either intentionally or recklessly abused Abby. Despite this, it is still possible to resolve her appeal.

Resolution of this case is complicated by the district court's findings. The district court did not specifically find whether T.S.'s conduct constituted abuse. Instead, the district court found:

> "At this time, the court feels that [S.S.] has not met the burden of preponderance of the evidence. That [T.S.] is a credible threat to her and to the children at this time. That does not mean that the court is condoning anything that [T.S.] may or may not have done in this situation.
>
>      . . . .
>
> "Again, I'm not condoning actions that were taken. But I'm finding that it is not raised to the level of preponderance of the evidence to have a Protection from Abuse [order] in place for a year."

In *Paida*, the Supreme Court defined bodily injury in the context of a parent/child relationship as requiring "a finding of substantial physical pain or an impairment of physical condition" and noted that whether an action constituted discipline or abuse must be determined from the facts of the case. 260 Kan. at 301. Based on the facts before it, the *Paida* court determined that, despite a cut lip, there was no bodily injury and, therefore, no abuse. 260 Kan. at 301.

*Barnett v. Barnett*, 24 Kan. App. 2d 342, 945 P.2d 870 (1997), is also instructive. After being disciplined by his father with a switch, the child had visible welts on his back; the district court found a PFA order was warranted. On appeal, the panel found that the child had not sustained a "substantial injury" because the father "did not break [the child's] skin" with the switch, the child "neither sought nor received medical attention, nor did he testify as to any enduring effects from the incident." 24 Kan. App. 2d at 351-52. The panel reversed the issuance of a PFA order because "the evidence was lacking as to whether [the father] willfully attempted to cause substantial physical pain or physical impairment" to the child. 24 Kan. App. 2d at 351.

S.S. neither acknowledges nor attempts to distinguish *Paida* or *Barnett*. She cites no caselaw finding that spankings constitute abuse. Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is like failing to brief the issue. *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Similarly, S.S. is not entitled to relief because she has not shown Abby suffered "substantial physical pain or an impairment of physical condition." See *Paida*, 260 Kan. at 301. Although the district court admitted photographs of Abby's welts into evidence, those photographs are not included in the record on appeal. Abby did not testify regarding the incident at the hearing.

S.S. testified she did not seek medical attention for Abby or that Abby requested medical attention. S.S.'s testimony does not describe the welts or suggest that T.S. broke Abby's skin with his belt. The burden is on the party making a claim to designate a record sufficient to present its points to the appellate court and to establish its claims. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 462-63, 509 P.3d 1211 (2022); see Supreme Court Rule 6.02(a)(4) (2026 Kan. S. Ct. R. at 36).

Although the district court appears to have applied an incorrect standard, S.S. has not established that she is entitled to relief. The record does not support a claim that Abby suffered a bodily injury as defined in *Paida*, 260 Kan. at 301, and, as a result, did not suffer abuse as defined in K.S.A. 60-3102(a)(1).

Affirmed.