NOT DESIGNATED FOR PUBLICATION

No. 129,747

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

N.D.,
*Appellee,*

v.

J.D.,
*Appellant.*

MEMORANDUM OPINION

Appeal from Sumner District Court; SCOTT MCPHERSON, judge. Submitted without oral argument. Opinion filed June 5, 2026. Affirmed.

*Stephen M. Turley* and *Jesse J. Gutierrez*, of Hinkle Law Firm LLC, of Wichita, for appellant.

*Bailey H. Schmiedeler*, of Penner Lowe Law Group, LLC, of Wichita, for appellee.

Before WARNER, C.J., ISHERWOOD and HURST, JJ.

PER CURIAM: Under the Protection from Abuse Act (PFA Act), a district court may grant a protection order upon finding that a family or household member has committed abuse—including conduct that places the petitioner in fear of imminent bodily injury. J.D. (Husband) appeals a PFA order entered in favor of N.D. (Wife), arguing the evidence was insufficient to establish that his conduct placed Wife in fear of imminent bodily injury. After carefully reviewing the record and the parties' arguments, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Wife and Husband were married in 2004 and have two children. In late May 2025, Wife filed a petition against Husband seeking protection from abuse, citing an incident that took place a few days earlier at her parents' home. Wife's petition stated that she was concerned her marriage with Husband had become "unhealthy"; she stated that when Husband "spirals," she feared for her safety and the safety of her children.

The district court issued a temporary PFA order and set a hearing for June 9. On June 2, Husband moved to dismiss the petition for failure to state a claim, arguing the recent incident at his in-laws' home—which had occurred on May 19—"did not involve [Wife] whatsoever." At the hearing on June 9, Husband again argued that the petition did not assert facts that would lead a reasonable person to fear for her bodily safety and therefore failed as a matter of law. The district court denied the motion and set the case for an evidentiary hearing about a month later on July 7.

At that hearing, the parties generally agreed on what had occurred on May 18 and 19, but they offered different explanations for and interpretations of the event. Wife testified that on May 18, while Husband was on a business trip, she discovered he was having an affair. She confronted Husband over the phone and called her father (Father), asking him to come to the marital home. Wife also called the police, telling them that Husband's plane was landing that night and that she did not know what he would do, though at that point he had not threatened her or their children.

Wife testified that she left with the children between 12:30 and 1:30 a.m. to go spend the night at her parents' house in a different town. After Wife arrived at her parents' home, Husband sent Wife numerous text messages professing his love for Wife and attaching photographs of the two of them on vacation. Wife did not respond and turned off her phone. Wife and the children fell asleep around 3:45 a.m.

2

Father testified that before going to bed, he had shut and padlocked the driveway gate, which was located about 300 feet from their house. Wife's mother awoke to a video alert from the Ring doorbell camera. She woke Father, and they looked at the video from the doorbell camera, which showed a vehicle in their driveway near the garage—about 50 feet from their home. To enter the driveway with the gate locked, Father testified that the car would have had to ram the gate open. Father then went outside, carrying a gun, to investigate.

Father testified that he saw Husband's car—a Mustang—with Husband in the driver's seat. Husband was screaming through an open window "[s]omething about kill," though Father could not hear everything over the revving engine. Father testified that Husband was "moving around in his car, driving in [Father's] yard, running into [the] house, [and] trying to run over" Father. He stated that Husband came "pretty close" to hitting him. When the car almost hit Father, Father fired his gun several times into the car's engine and tires.

This encounter was recorded by the house's Ring doorbell. The video doorbell footage begins shortly after 4 a.m. on May 19 and shows Husband's car in the front driveway and driving in the front yard. At one point, Husband's vehicle is near the front door as the engine revs loudly. The footage also shows Father firing his weapon multiple times at the vehicle. The car then backs away.

Wife woke to Husband's Mustang revving outside the house and recognized the sound of the engine. She took her daughter into the bathroom and locked the door. Husband messaged Wife and asked her to come outside, but Wife did not receive the messages, as she had turned off her phone and had not brought it into the bathroom with her. With no window to see what was happening outside, Wife heard "revving and then the banging and then the sounds on the sidewalk and then the gunshots." Wife testified

3

that she was "shaking" and "holding my daughter praying," afraid because Husband had taken the effort to come to her parents' house—a new home he had not visited before.

When the revving and gunshots stopped, Wife testified that she emerged from the bathroom and checked on her son. She then observed tire marks in the yard and on the sidewalk near the house and two smashed chairs in front of the house.

Husband did not testify at the hearing, though he was represented by counsel who cross-examined the witnesses and offered argument on his behalf.

After hearing the testimony and reviewing the video doorbell footage, the district court recited the applicable burden of proof—preponderance of the evidence—and granted Wife's petition, finding:

> "[Wife] testified that when she heard the revving of this engine, in fear she took herself and her daughter into a bathroom and locked the door. And [Husband's] intentional coming to the house, coming through a locked, chained gate, revving the engine, driving it right up to the front door of this house, this intentional act by him, the Court finds is a physical threat and that it placed [Wife] in fear of eminent bodily injury. No bodily injury occurred but it placed her in fear, and I would say that a reasonable person with given the totality of these circumstances would be placed in fear by [Husband's] intentional act."

After the district court's ruling, Husband filed a motion to alter or amend the judgment, arguing, among other things, that "[t]he facts alleged . . . are insufficient as a matter of law to support a finding of abuse as that term is defined in K.S.A. 60-3102(a)." After a hearing, the district court denied the motion and reaffirmed its ruling. Husband appeals, again challenging the sufficiency of the evidence to enter the protection order.

4

"When a party challenges the sufficiency of the evidence, this court determines whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's legal conclusions." *J.B.B. v. J.L.B.*, 60 Kan. App. 2d 310, 317, 495 P.3d 1036 (2021). Substantial competent evidence is "legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion." 60 Kan. App. 2d at 317. When reviewing the evidence, we do not reweigh it or assess witness credibility; instead, we view the evidence in the light most favorable to the prevailing party. 60 Kan. App. 2d at 317. Thus, we "accept 'all evidence and inferences that support or tend to support the [district court's] findings as true, and . . . must disregard all conflicting evidence.'" 60 Kan. App. 2d at 317 (quoting *Frick Farm Properties v. Kansas Dept. of Agriculture*, 289 Kan. 690, 709-10, 216 P.3d 170 [2009]).

The PFA Act directs courts to construe its provisions "liberally . . . to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding pro se." K.S.A. 60-3101(b). Protection orders "are by their nature subjective judgments, and the district court is in the best position to know when they are warranted." *J.B.B.*, 60 Kan. App. 2d at 317.

Relevant here, the PFA Act defines abuse between "intimate partners or household members" as "[i]ntentionally attempting to cause bodily injury, or intentionally or recklessly causing bodily injury" and "[i]ntentionally placing, by physical threat, another in fear of imminent bodily injury." K.S.A. 60-3102(a)(1), (2). The PFA Act defines "[i]ntimate partners or household members" as "persons who are or have been in a dating relationship, persons who reside together or who have formerly resided together or persons who have had a child in common." K.S.A. 60-3102(b).

There is no question that Wife and Husband are intimate partners or household members. But Husband argues that there was no evidence of abuse under the statute. He contends that he made no threat to Wife and that she could not see what was happening outside her parents' home, so he had not attempted to harm Wife and she could not have been in fear of imminent bodily injury.

Husband relies on two recent decisions of this court to bolster this argument. The first case is *J.B.B.*, where a husband and wife were getting divorced. As a part of that divorce, the husband was continuing to use a truck that the wife owned, and the husband was responsible for making the monthly car payments. When the parties met one day to exchange custody of their minor child, the wife accused the husband of not making the monthly payment on time. The husband claimed he would pay it in the next few days and left to go inside the store. The wife became upset and "forcibly entered the passenger side of the vehicle, climbed over [the husband]'s girlfriend, and grabbed the keys from the ignition of the truck." 60 Kan. App. 2d at 312. During the scuffle, "the girlfriend sustained a non-remarkable laceration." 60 Kan. App. 2d at 312. This court held the evidence was insufficient to establish an intentional act placing another, by physical threat, in fear of imminent bodily injury. 60 Kan. App. 2d at 318-19.

The second case Husband relies upon is *Baker v. McCormick*, 52 Kan. App. 2d 899, 913-14, 380 P.3d 706, *rev. denied* 305 Kan. 1251 (2016). In *Baker*, a grandfather petitioned for a protection order. The panel affirmed the district court's denial of that order, as the record supported the district court's conclusion that the grandparent had not established that the father abused one of the children by placing her in fear of imminent bodily injury. 52 Kan. App. 2d at 913-14. There was no evidence that the children had witnessed the father's abuse of the mother or "that [father] ever attempted to strike or harm [daughter]." 52 Kan. App. 2d at 914.

Husband argues that the rationale of these cases undermines the district court's finding of abuse, as the evidence here only showed a confrontation between Father and Husband that Wife never witnessed. We disagree.

Husband is correct that in *J.B.B.* and *Baker*, this court found a protection order unwarranted when the challenged conduct was not directed at the person seeking the order. In *J.B.B.*, the wife forced her way into a truck and physically confronted the husband's girlfriend but did not threaten the husband himself, who was inside the gas station. 60 Kan. App. 2d at 312. And in *Baker*, the panel found no evidence that the daughter witnessed the events or that the father tried to strike or harm her. 52 Kan. App. 2d at 914. But the facts here are distinguishable from those cases.

Here, the district court found that Husband's intentional actions were directed at Wife, and there is substantial competent evidence in the record to support that conclusion. Husband traveled to Wife's parents' house, forced his way through a locked gate, and drove his Mustang across the driveway and yard up to the front door. When Wife woke to the sound of Husband's Mustang revving outside, she locked herself and her daughter in the bathroom, fearing for her safety. When asked whether she was afraid, Wife testified that she was because Husband was "coming to my parents' house at 4:00 a.m.," knowing she was there. And after the incident, Wife learned that Husband had texted her when he arrived, asking her to come outside.

Viewing the evidence in the light most favorable to Wife—as our appellate role requires—we find that there was substantial competent evidence presented at the evidentiary hearing to support the district court's finding that Husband intentionally placed Wife, by physical threat, in fear of imminent bodily injury. We affirm the district court's judgment.

Affirmed.